**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

ZAREH TANAHAN,

        Petitioner,

    v.

THE UNITED STATES OF AMERICA, *et al.*,

        Respondents.

Case No. 2:25-cv-02075-RFB-BNW

**ORDER GRANTING**
**WRIT OF HABEAS CORPUS**

Before the Court is Petitioner Zareh Tanahan's Petition for Writ of Habeas Corpus (ECF No. 6). Through it, Mr. Tanahan argues that his ongoing detention is unlawful because his removal from the United States is not reasonably foreseeable. For the following reasons, the Court agrees and awards Mr. Tanahan a writ of habeas corpus.

**I.    PROCEDURAL HISTORY**

On October 24, 2025, Petitioner Zareh Tanahan filed a verified petition for writ of habeas corpus, an application to proceed *in forma pauperis* ("IFP"), and a motion for appointment of counsel. See ECF Nos. 1, 1-1, 2. His case was originally assigned to the Honorable Andrew P. Gordon, Chief Judge of the United States District Court for the District of Nevada.

On October 28, 2025, Mr. Tanahan's case was transferred to the Honorable Richard F. Boulware, II, United States District Judge for the District of Nevada. See ECF No. 4. That same day, the Court granted Mr. Tanahan's IFP application and appointed the Federal Public Defender ("FPD") to represent him. See ECF No. 5. The Court also screened Mr. Tanahan's petition and determined that he had established a *prima facie* case for relief; accordingly, the Court ordered

Respondents to show cause for Petitioner's detention within fourteen days. See id.; see also 28 U.S.C. § 2243 ("A court . . . entertaining an application for a writ of habeas corpus shall fortwith award the writ or issue an order directing the respondent[s] to show cause why [it] should not be granted.").

After requesting several extensions, Respondents filed a return on November 18, 2025. See ECF No. 15. Petitioner, by and through counsel, filed his traverse on November 25, 2025. See ECF No. 16.

On January 5, 2026, Mr. Tanahan filed an emergency motion for a temporary restraining order. See ECF No. 17. Through it, he urges the Court to order his immediate release based on the same claim he presents in his petition. See generally id.

The Court's Order on Mr. Tanahan's petition follows below.

## II.    JURISDICTION

The Constitution guarantees the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl.2). "Its province, shaped to guarantee the most fundamental of all rights, is to provide an effective and speedy instrument by which judicial inquiry may be had into the legality of the detention of a person." Carafas v. LaVallee, 391 U.S. 234, 238 (1968) (citations omitted). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001) (citations omitted), superseded by statute on other grounds as stated in Nasrallah v. Barr, 590 U.S. 573, 580 (2020). Accordingly, this Court has jurisdiction to grant writs of habeas corpus to noncitizens who are being detained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); see also Trump v. J.G.G., 604 U.S. 670, 672 (2025) (clarifying that an immigration detainee's challenge to their confinement, and removal, falls "within the 'core' of the writ of habeas corpus") (per curium) (citations and quotation marks omitted); see also Lopez-Marroquin v. Barr, 955 F.3d 759, 759 (9th Cir. 2020) ("[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to

immigration detention . . . ."); see also Zadvydas v. Davis, 533 U.S. 678, 688 (2001) ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention.").

Although habeas corpus is "civil in nature[,] and the petitioner bears the burden of proving that his detention is illegal[,]" Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1952), the mechanics of habeas proceedings are unique. See Harris v. Nelson, 394 U.S. 286, 294–95 (1969). When a court confronts a viable habeas petition, it must either award the writ or order respondent(s) to show cause—i.e., to "make a return certifying the true cause of [ ] detention." 28 U.S.C. § 2243; see also Harris, 394 U.S. at 298–99 (citation omitted). Since habeas petitions must be verified, see 28 U.S.C. § 2242, their undisputed factual allegations should be taken at face value. See Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (quoting Whitten v. Tomlinson, 160 U.S. 231, 242 (1895)) (citations omitted). Similarly, the certified, undisputed allegations of respondent(s) should also be accepted as true *unless* they are contradicted by relevant evidence. See id. To reach the truth of these matters, district courts "may fashion appropriate modes of procedure" to "summarily hear and determine the facts[ ] and dispose of the matter as law and justice require." Harris, 394 U.S. at 299 (quoting 28 U.S.C. § 2243) (quotation marks omitted). In fact, it is "the inescapable obligation of the courts" to vindicate their "habeas corpus jurisdiction" by fashioning "methods for securing facts where necessary." Id.

### III.    FACTUAL BACKGROUND

As a preliminary matter, the Court makes the following findings of fact based on the Parties' undisputed factual allegations and the evidence they supply. See supra Part II (describing the fact-finding process in habeas proceedings).

Mr. Tanahan is an Iranian citizen who fled his native country as a refugee. See ECF No. 6 at 2. Alongside his family, he was admitted to the United States around July 17, 1986, as a lawful permanent resident. See ECF No. 15 at 2; see also ECF No. 15-1 at 1 (Petitioner's notice to appear, which describes his immigration history).

Within the United States, Petitioner engaged in a long course of criminal conduct;[1] consequently, the Department of Homeland Security ("DHS") launched removal proceedings against him on September 25, 2019. See ECF No. 15-1. On April 2, 2020, the Executive Office of Immigration Review ("EOIR") ordered Petitioner removed to Iran. See ECF No. 15-2 (Petitioner's final order of removal). Simultaneously, the presiding immigration judge ("IJ") granted Petitioner withholding of removal to Iran. See id. Petitioner and DHS both waived their right to appeal this order that same day. See id.

Pursuant to the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101–1537, Mr. Tanahan was detained for ninety days and then released on an order of supervision issued by Immigration and Customs Enforcement ("ICE"). See ECF No. 15 at 5; see also ECF No. 16 at 2.

He remained at liberty within the United States until June 24, 2025, when ICE re-detained him during a "targeted operation." ECF No. 15-4 (Petitioner's I-213). Specifically, ICE re-detained Mr. Tanahan as he was entering his parked vehicle because he "was in violation of immigration law." Id.

Since then, Petitioner has been detained at the Nevada Southern Detention Center in Pahrump, Nevada. See ECF No. 15 at 5.

## IV.    LEGAL STANDARD

By way of background, the INA provides a "complex statutory framework of detention authority." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008). Specifically, four provisions empower the government "to detain non-citizens who have been placed in removal proceedings: 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a)." Avilez v. Garland, 69 F.4th 525, 529 (9th Cir. 2023) (footnotes omitted) (citation modified). A non-citizen's place within this web of statutes is significant as it "can affect whether [their] detention is mandatory or

---

[1] Throughout their return, Respondents spill much ink detailing Petitioner's criminal history. See ECF No. 15 at 2–4. Although this history is serious, it is irrelevant to the Court's inquiry—which focuses squarely on the likelihood of Petitioner's removal in the reasonably foreseeable future. See infra Part IV.ii.; see also infra Part V; see also generally Zadvydas v. Davis, 533 U.S. 678 (2001) (facilitating the release of two non-citizens with final orders of removal because their deportation was not reasonably foreseeable even though they both had extensive criminal records). Accordingly, the Court declines to transform these proceedings into an inquisition into Petitioner's criminal history.

discretionary, as well as the kind of review process available to [them] if [they] wish[ ] to" challenge their detention. See id. (citation omitted). Respondents invoke § 1226(c) and § 1231(a) to justify Petitioner's detention. See ECF No. 15 at 4–5. Therefore, they are the only provisions of the INA that are relevant to this case.

### i. *Section 1226(c)*

Initially, § 1226(c) requires the Attorney General of the United States to detain non-citizens who fall "into one of several enumerated categories involving criminal offenses and terrorist activities." Jennings v. Rodriguez, 583 U.S. 281, 289 (2018). Under this provision, detention is mandatory. See Avilez, 69 F.4th at 530 (citing Jennings, 583 U.S. at 305–306). But it is not infinite. Rather, § 1226(c) "authorize[s] detention pending a decision on whether [a] noncitizen is to be removed from the United States." Id. at 537 (citations and quotation marks omitted). Put differently, "detention under § 1226(c) has a 'definite termination point:' the conclusion of removal proceedings." Jennings, 583 U.S. at 304 (citation omitted).

### ii. *Section 1231(a)*

Meanwhile, § 1231 governs the detention of non-citizens who are subject to final orders of removal. See 8 U.S.C. § 1231(a); see also Rodriguez Diaz v. Garland, 53 F.4th 1189, 1197 (9th Cir. 2022) (citing Jennings v. Rodriguez, 583 U.S. 281, 298 (2018)) (clarifying that § 1231(a) supplies DHS's detention authority once a non-citizen is subject to a final removal order). When a non-citizen "is ordered removed, [DHS] must physically remove [them] from the United States within a 90-day 'removal period.'" Johnson v. Guzman Chavez, 594 U.S. 523, 528 (2021) (quoting 8 U.S.C. § 1231(a)(1)(A)). During this period, "detention is mandatory." Id. (citing § 1231(a)(2)). A non-citizen's removal period begins on the latest of three dates: (i.) when their removal order becomes administratively final; (ii.) when a court that stayed deportation enters a final order regarding deportation; or (iii.) when they are released from non-immigration detention. See 8 U.S.C. § 1231(a)(1)(B); see also Guzman Chavez, 594 U.S. at 528 (citing 8 U.S.C. § 1231(a)(1)(B)).

As soon as a non-citizen's removal period lapses, they must be released subject to supervision, see 8 U.S.C. § 1231(a)(3), unless they fall into one of four statutory categories. See 8

U.S.C. § 1231(a)(6); see also Zadvydas v. Davis, 533 U.S. 678, 688 (2001) (citations omitted) ("The post-removal-period detention statute applies to certain categories of [non-citizens]."). Pursuant to § 1231(a)(6), DHS may continue to detain a non-citizen who is: (i.) inadmissible; (ii.) removable under certain provisions of § 1227(a); (iii.) a risk to the community; or (iv.) unlikely to comply with their removal order. See Johnson v. Arteaga-Martinez, 596 U.S. 573, 579 (2022) (quoting 8 U.S.C. § 1231(a)(6)). "Continued detention under this provision [triggers] the 'post-removal period.'" Guzman Chavez, 594 U.S. at 529.

Once a non-citizen enters the post-removal period, they are subject to detention insofar as their deportation is reasonably foreseeable. As written, the INA does not limit the length of post-removal-period detention. See 8 U.S.C. § 1231(a)(6). But a statute that authorizes "indefinite, perhaps permanent, detention" poses a "serious constitutional threat." Zadvydas, 533 U.S. at 699 (citation omitted). Accordingly, the Supreme Court has read an implicit limitation into § 1231(a)(6) based on "the Constitution's demands." Guzman Chavez, 549 U.S. at 529 (quoting Zadvydas, 533 U.S. at 689). Specifically, the Zadvydas Court "held that [a non-citizen] may be detained only for 'a period reasonably necessary to bring about that [non-citizen's] removal from the United States.'" Id. (quoting Zadvydas, 533 U.S. at 689). The Supreme Court also held that six months is a presumptively reasonable period of time to deport a non-citizen. See Zadvydas, 533 U.S. at 700–701. In practice, this means that DHS can presumptively detain a non-citizen for up to "*six months* after a final order of removal—that is *three months* after the statutory removal period has ended." Kim Ho Ma v. Ashcroft, 257 F.3d 1095, 1102 n.5 (9th Cir. 2001). "After that point, if the [non-citizen] 'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' the [g]overnment must either rebut that showing or release the [non-citizen]." Guzman Chavez, 549 U.S. at 529 (citation omitted) (quoting Zadvydas, 533 U.S. at 701).

In short, post-removal-period detention violates the INA *and the Constitution* when a non-citizen's removal is not reasonably foreseeable. Cf. Arteaga-Martinez, 596 U.S. at 579 (citation omitted) (reaffirming that Zadvydas construed 8 U.S.C. § 1231 "in light of the Constitution's demands.").

## V.   DISCUSSION

Petitioner's detention is governed by 8 U.S.C. § 1231(a) because he is subject to a final order of removal. He is not subject to mandatory detention, as his removal period ended over five years ago. Based on this timeline, his ongoing detention is no longer presumptively reasonable. Rather, it is unlawful because his removal from the United States is not reasonably foreseeable.

### i.   *Statutory Scheme: § 1226(c) and § 1231(a)*

As a preliminary matter, Petitioner cannot be detained pursuant to § 1226(c); instead, he falls squarely within the ambit of § 1231(a) because he has a removal order. In a brief aside, Respondents seem to suggest that Petitioner is "subject to mandatory detention pursuant to 8 U.S.C. § 1226(c)" based on his criminal history. See ECF No. 15 at 4–5. To the extent they do, Respondents are wrong. It is well-established that § 1226(c) does not supply *carte blanche* detention authority; put differently, Respondents cannot invoke this provision to detain a non-citizen whenever they want to. Rather, "detention under § 1226(c) has a 'definite termination point:' the conclusion of removal proceedings." Jennings v. Rodriguez, 583 U.S. 281, 289 (2018) (quoting Demore v. Kim, 538 U.S. 510, 529 (2003)). Petitioner's removal proceedings ended nearly six years ago. See ECF No. 15-2. Therefore, he cannot be detained under § 1226(c). Instead, Petitioner's detention is governed by 8 U.S.C. § 1231(a) because he has a final order of removal. See id.; see also supra Part IV.ii.

### ii.   *Mandatory Detention Under § 1231(a)*

With this in mind, the Court considers whether he is subject to mandatory detention pursuant to this provision. He is not. The Executive Office of Immigration Review ordered Petitioner removed on April 2, 2020. See ECF No. 15-2. Because Petitioner and DHS waived their appellate rights, Petitioner's removal order became administratively final that same day. See 8 U.S.C. § 1101(a)(47)(B)(ii); see also 8 C.F.R. § 1241.1(b) ("An order of removal . . . shall become final . . . [u]pon waiver of appeal by the respondent."); see also Padilla-Ramirez v. Bible, 882 F.3d 826, 831 (9th Cir. 2017). Thus, Petitioner's removal period began running on April 2, 2020, and it lapsed on July 1, 2020—i.e., 90 days later. See 8 U.SC. § 1231(a)(1)(A).[2] As soon as it did,

---

[2] The Court relies on the date of Petitioner's removal order because the remaining provisions of 8 U.S.C. § 1231(a)(1)(B) appear to be inapplicable in this case.

Petitioner entered the post-removal period and was no longer subject to § 1231(a)(2)(A)'s mandatory detention requirement. See 8 U.S.C. § 1231(a)(3); Arteaga-Martinez, 596 U.S. at 578–79 (citations omitted).

### iii.  *Presumption of Reasonability*

Since Petitioner is within the post-removal period, the Court must decide whether his ongoing detention is presumptively reasonable. The Court finds that it is not. To recap, it is presumptively reasonable for DHS to detain a non-citizen for up to "*six months* after a final order of removal—that is *three months* after the statutory removal period has ended." Kim Ho Ma v. Ashcroft, 257 F.3d 1095, 1102 n.5 (9th Cir. 2001). Petitioner's final order of removal is nearly six years old, and his statutory removal period ended approximately sixty-six months ago.[3] Therefore, his ongoing detention exceeds the bounds of that which is presumptively permissible under the INA and the Constitution. See Zadvydas, 533 U.S. at 701.

### iv.  *Foreseeability of Removal*

Turning to the specific facts of this case, the Court finds that Petitioner has shown that his removal is not reasonably foreseeable. Petitioner was ordered removed on April 20, 2020. That was *over five years ago*. Despite an abundance of time, ICE has been unable to effectuate Petitioner's removal from the United States. This is unsurprising. ICE cannot deport Petitioner to his birth country because he has been granted withholding of removal to Iran. See ECF No. 15-2. And Respondents have yet to identify any viable alternatives. See ECF No. 15 at 10 ("[ICE] has

---

[3] In their return, Respondents argue that Mr. Tanahan's application for a writ of habeas corpus is premature because he was re-detained on June 24, 2025; therefore, it was presumptively reasonable for the government to detain him until December 23, 2025. See ECF No. 15 at 9. This argument fails for at least three reasons. First, a non-citizen's presumptively reasonable period of detention is tied to their removal order, and it lapses six months after this order becomes final. See Kim Ho Ma v. Ashcroft, 257 F.3d 1095, 1102 n.5 (9th Cir. 2001). Mr. Tanahan's removal order became final on April 20, 2020. See ECF No. 15-2. Therefore, it is no longer presumptively reasonable for Respondents to detain him. Second, non-citizens are not subject to a new presumptively reasonable period of detention *every time* they are re-detained. The INA does not authorize indefinite detention. That principle is the central thrust of the Supreme Court's decision in Zadvydas v. Davis, 533 U.S. 678, 689 (2001) ("In our view, [§ 1231(a)(6)], read in light of the Constitution's demands, limits [a non-citizen's] post-removal-period detention to a period reasonably necessary to bring about [their] removal from the United States. It does not permit indefinite detention."). If a non-citizen is subject to a new presumptively reasonable period of detention every time they are detained, the government could simply circumvent the INA—and the Zadvydas Court's due process concerns—by releasing and re-detaining the non-citizen "such that they never reach six months of continuous detention. That would amount to indefinite detention in all but name, which is statutorily and constitutionally impermissible." Shadalo v. Mattos, No. 2:25-cv-02076-RFB-BNW, 2025 WL 3568234, at *6 (D. Nev. Dec. 14, 2025) (citations omitted). Third, December 23, 2025, has passed; therefore, it is not presumptively reasonable for the government to detain Mr. Tanahan under Respondents' own terms.

submitted the requisite paperwork to carry out the process of identifying a country for Tanahan's removal."). On this record, this Court has "good reason to believe that there is no significant likelihood of [Petitioner's] removal in the reasonably foreseeable future." Guzman Chavez, 549 U.S. at 529 (quoting Zadvydas, 533 U.S. at 701); see also Nadarajah v. Gonzales, 443 F.3d 1069, 1081–82 (9th Cir. 2006) (finding that the government's inability to repatriate a non-citizen, or identify any viable alternatives, formed a "powerful indication of the improbability of his foreseeable removal").

Finally, Respondents have failed to rebut this showing. Respondents argue that Petitioner's removal is reasonably foreseeable because: (i.) the United States can repatriate Iranians and (ii.) Mr. Tanahan is currently being processed for third country removal. See ECF No. 15 at 10. For the following reasons, the Court disagrees.

First, Mr. Tanahan cannot lawfully be deported to Iran unless, and until, his grant of withholding of removal is properly terminated pursuant to Respondents' own binding regulations. See generally 8 C.F.R. § 1208.24, invalidated on other grounds by Nijjar v. Holder, 689 F.3d 1077, 1085–86 (9th Cir. 2012); see also Gutierrez v. Holder, 70 F.3d 900, 901–902 (9th Cir. 2013) (relying on 8 C.F.R. § 1208.24 to evaluate the termination of a grant of withholding of removal); see also Backcountry Against Dumps v. Fed. Aviation Admin., 77 F.4th 1260, 1267 (9th Cir. 2023) ("[F]ederal agenc[ies] . . . [are] obliged to abide by the regulations [they] promulgate[ ].") (citations and internal quotation marks omitted). In other words, the United States' ability to repatriate Iranians is irrelevant to this case because Respondents cannot repatriate Mr. Tanahan at this time.

Second, although Respondents are purportedly attempting to deport Mr. Tanahan to an undesignated third country, Respondents have yet to identify any concrete progress toward this goal. Respondents have not identified any viable third countries. Respondents have not shown that a third country is willing to accept Mr. Tanahan. And Respondents have not supplied any evidence of travel documents that would facilitate Mr. Tanahan's removal from the United States. On this record, the Court is unwilling to find that Petitioner's removal is imminent merely because Respondents say it is.

At best, Respondents have established a *possibility* of Mr. Tanahan's removal at some point in the indeterminate future. This is woefully insufficient to establish a "significant likelihood of removal in the reasonably foreseeable future." Johnson v. Guzman Chavez, 594 U.S. 523, 529 (2021) (citations omitted). Instead, the Court finds that Petitioner has been condemned to a "removable-but-unremovable limbo," whereby he is legally—but not practically—removable from the United States. See Prieto-Romero v. Clark, 534 F.3d 1053, 1065 (9th Cir. 2008) (citation omitted). Accordingly, his ongoing detention is statutorily and constitutionally unlawful, and he must "be released into American society." Jama v. Immigr. & Customs Enf't, 543 U.S. 335, 347–48 (2005).

**VI.    CONCLUSION**

For the foregoing reasons, **IT IS HEREBY ORDERED** Mr. Tanahan's Petition for Writ of Habeas Corpus (ECF No. 6) is **GRANTED**. Defendants must **IMMEDIATELY RELEASE** Petitioner by no later than **12:00 P.M.** on **January 22, 2026**, subject to the conditions of his prior order of supervision. See 8 U.S.C. § 1231(a)(3).

**IT IS FURTHER ORDERED** the Parties shall file a joint status report by **January 23, 2026**, confirming Respondents' compliance with this Order.

**IT IS FURTHER ORDERED** Petitioner's Motion for Temporary Restraining Order (ECF No. 17) is **DENIED** as moot.

The Clerk of Court is instructed to enter judgment accordingly and close this case.

**DATED:** January 21, 2026.

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**